IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01678-PSF-CBS

COMPETITIVE TECHNOLOGIES, INC., a Delaware corporation,

     Plaintiff,

v.

CAROLINA LIQUID CHEMISTRIES CORPORATION, a Delaware corporation,

     Defendant

---

**ORDER ON DEFENDANT'S CORRECTED MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE,
OR IN THE ALTERNATIVE, TO TRANSFER VENUE**

---

     This matter comes before the Court on Defendant's Corrected Motion to Dismiss, or in the Alternative, Motion To Transfer Venue (Dkt. # 17), filed October 13, 2005. The motion references a declaration of Philip Shugart, President and founder of Defendant Carolina Liquid Chemistries Corporation ("Carolina Chemistries"), which was filed on October 11, 2005 together with defendant's original motion to dismiss (Dkt. # 12).

     On January 3, 2006, this Court entered an order denying defendant's motion to stay this litigation pending a decision by the United States Supreme Court in a case involving the same patent at issue in this case (Dkt. # 38).  In its order the Court directed the parties to complete the discovery they had scheduled relating to the jurisdictional issues and complete the briefing on the issues raised in the motion to dismiss (Order at 4-5).  On January 30, 2006, Plaintiff Competitive Technologies, Inc. ("CTI") filed, under seal, its Opposition to Defendant's Corrected Motion, together with

Exhibits A through R (Dkt. # 41).  On February 14, 2006, defendant filed under seal its reply to plaintiff's response, together with attachments including a further declaration of Shugart, a declaration of Sandra Strauss, and other documents marked as Exhibits A-6 through A-10 (Dkt. # 49).  On February 17, 2006, plaintiff filed a motion for leave to file a surreply brief in support of its opposition to the motion to dismiss (Dkt. # 52), which was granted on February 21, 2006 (Dkt. # 53).  On the same date, plaintiff's surreply brief, tendered with its motion for leave to file, was deemed filed together with Exhibits A through G attached thereto (Dkt. # 54).

On March 8, 2006, defendant submitted a filing titled "Unopposed Motion for Leave to File Plaintiff's Corrected Response In Opposition to Defendant's Corrected Motion to Dismiss and Plaintiff's Reply Under Seal, With Provision for Filing of Redacted Public Versions."  (Dkt. # 60).  Despite its verbose and nearly incomprehensible title, this motion is apparently a motion to have certain portions of the previously filed briefs and exhibits kept under seal or have a redacted version substituted.  The motion was granted by the Magistrate Judge on March 15, 2006 and the Clerk of the Court was instructed to accept for filing redacted versions of Plaintiff's Response to the Motion to Dismiss and Defendant's Reply (Dkt. # 62).  These procedures having been completed, the motion is now ripe for determination.

**BACKGROUND**

Plaintiff CTI filed its complaint in this action on August 29, 2005 (Dkt. # 1), alleging one claim for relief against defendant for direct or indirect patent infringement, contributorily or by inducement, arising from defendant's sale or offers for sale of its homocysteine test kits (Complaint ¶ 16).  Plaintiff alleges that defendant is a Delaware

corporation with a place of business in Brea, California (*id.* at ¶ 2) but also alleges that defendant distributes the infringing product throughout the United States, including into the State of Colorado (*id.* at ¶ 4). Thus, plaintiff asserts venue in this district is proper pursuant to 28 U.S.C. §§ 1391 and 1400.

The essence of plaintiff's complaint appears to be that defendant is in the business of marketing and selling kits used for medical testing and assaying bodily fluids, at least one of which measures a patient's level of homocysteine. According to plaintiff, elevated levels of homocysteine may indicate conditions associated with cardiovascular disease (Complaint at ¶¶ 6, 9). Defendant alleges that it is the owner of U.S. Patent No. 4,940,658 (the "'658 patent"), which according to plaintiff covers in part a method for detecting or treating a deficiency of cobalamin or folate by assaying body fluid for elevated levels of homocysteine (*id.* at ¶ 13). As stated above, plaintiff avers that the test kits offered for sale by defendant infringe upon its '658 patent. (*Id.* at ¶ 16).

**DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE**

Defendant argues that plaintiff's complaint should be dismissed for lack of personal jurisdiction over it, or for lack of venue, in the District of Colorado. Alternatively, defendant requests that venue of this case be transferred to the Central District of California, where defendant has its principal place of business (Motion at 10).

Defendant asserts that jurisdiction under the Colorado long-arm statute does not lie here because none of its alleged activities giving rise to this case occurred in Colorado, as it "is not aware of any homocysteine assay sold or used by any customer in Colorado in either 2004 or 2005" (*id.* at 4). Relying on the affidavit of its President and founder, Philip Shugart, defendant states that while it has sold "instruments and

reagents to customers in Colorado" the volume of sales is a small dollar amount ($5,139 in 2005 and $704 in 2004) and none of the sales were for homocysteine assay (Schugart Affidavit at ¶¶ 4-6). The Shugart affidavit also states that defendant has no property, offices, employees or salespeople in Colorado, and has never sent an employee or agent to Colorado (*id.* at ¶¶ 7-9).  Thus, the affidavit states that defendant "has never conducted any type of program in Colorado" and "does not regularly conduct business in Colorado."  *Id.* at 10-11.

Defendant also asserts that venue of this case does not lie in Colorado because its documents, files, archives, most of its witnesses, and all of its service representatives who market homocysteine assay are located in California *(id.* at 12-14). Shugart also states that he is "not aware of any witness residing in Colorado whom [defendant] might call as a witness in this action".  He also states that he believes "the evidence will show that the development of the homocysteine test kits . . . at issue in this case took place in California and not" in Colorado (*id.* at 17-18).

## PLAINTIFF'S RESPONSE

Plaintiff responds that there is no dispute that defendant is a supplier of laboratory test kits some of which are used to assay for homocysteine by a method that allegedly infringes the '658 patent.  Plaintiff describes defendant as "a holdout in the industry in its refusal to take a license to this patent."  (Plaintiff's Response at 4).

Plaintiff further argues that discovery taken in the case shows that defendant markets and sells its products in Colorado, and offers the homocysteine assay kit for sale in Colorado, although it may not have concluded any sales of that product in the state (Plaintiff's Response at 4-5).  With respect to its assertion of specific jurisdiction,

plaintiff claims that defendant has sent direct mail pieces to Colorado companies offering the homocysteine test kits (*id.* at 7 and Exhibits E, F. G and H thereto).  Plaintiff further contends that defendant's sale representatives have made telephone calls or sent email and faxes to at least eight companies offering to sell the homocysteine test kits as reflected in sales contact sheets (*id.* at 7 and Exhibit I thereto).  Plaintiff also asserts that defendant has sent several cost quotes for the kits to Colorado companies (*id.*).  Defendant also apparently operates a website accessible in Colorado, although there is a dispute over whether customers may place orders for products online (*cf.* Plaintiff's Response at 9 with Defendant's Reply at 7-8 and Second Shugart Affidavit, attached thereto, at ¶ 3).  Plaintiff asserts that the website was altered after this case was filed so as to delete the "order form" portion which had appeared on the former website (Plaintiff's Surreply at 5-6).

**APPLICABLE LEGAL STANDARDS**

Once a court's personal jurisdiction over a defendant has been challenged, "the plaintiff has the burden of proving jurisdiction exists."  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  When a district court rules on a F.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction based on affidavits and other written materials, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

In deciding such a motion to dismiss, "[t]he allegations in the complaint must be taken as true to the extent that they are uncontroverted by the defendant's affidavits."

5

*Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).  When the parties present conflicting affidavits, "all factual disputes are resolved in the plaintiff's favor and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *Id.*; *see also Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

This is a patent case, and therefore this Court is bound to apply the law of the Federal Circuit.  The case law of that circuit recognizes the exercise of personal jurisdiction over a nonresident defendant if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process.  *See 3d Systems Inc., v. Aarotech Lab's, Inc.,* 160 F.3d 1373, 1376-77 (Fed. Cir. 1998).  The parties here agree that the availability of personal jurisdiction is determined in accordance with Colorado's long-arm statute, C.R.S. § 13-1-124 *et seq.* (Defendant's Motion at 2-3; Plaintiff's Response at 5-6).  That statute "extend[s] the personal jurisdiction of Colorado courts to their maximum limits permissible under the United States and Colorado Constitutions."  *Scheuer v. District Court*, 684 P.2d 249, 250 (Colo. 1984).

**ANALYSIS**

### A.    Motion to Dismiss For Lack of Personal Jurisdiction

In this case, plaintiff argues that defendant is subject to specific jurisdiction in Colorado (Plaintiff's Response at 7-8).  "Specific jurisdiction exists when a non-resident

defendant purposefully establishes minimum contacts with the forum state, the cause of action arises out of those contacts, and jurisdiction is constitutionally reasonable." *3-D Systems, Inc.,* 160 F.3d at 1378 again citing to *Burger King Corp. v. Rudzewicz.* The federal circuit cites a three-pronged minimum contacts test: (1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair.  *3-D Systems, Inc., supra,* 160 F.3d at 1378 citing to *Akro v. Luker,*  45 F.3d 1541, 1545-46 (Fed Cir.) *cert. denied*, 515 U.S. 1122 (1995).

In *3-D Systems*, as in the instant case, the defendant was accused of making offers to sell the infringing product in the state (California) where jurisdiction was sought to be established even though there was no evidence of defendant's personnel actually engaging in sales activities in California, or even of any California sale.  The evidence revealed that the defendant had sent solicitations and price quotation letters for orders into California, had responded to e-mail requests for information, and had mailed promotional materials into California. 160 F.3d at 1378.  On these facts the Federal Circuit panel found sufficient facts to support the exercise of specific jurisdiction in California.  *Id.* at 1380.

In considering the second prong of the three-pronged test, the panel in *3-D Systems,* a case upon which plaintiff relies, found that the price quotation letters sent by the alleged infringer constituted "offers to sell" within the meaning of 35 U.S.C.

§ 271(a)[1], and "to treat them as anything other than offers to sell," notwithstanding disclaimers to that effect, "would be to exalt form over substance."  *Id.* at 1379. Defendant here argues that the rationale of *3-D Systems* cannot apply to it.

Citing to cases decided after *3-D Systems*, Defendant Carolina Chemistries argues that an offer to sell, which is to be determined under contract law, is only made when the offeree has the power to accept the offer (Defendant's Reply at 4). Defendant here asserts that contrary to plaintiff's assertions, it merely engaged in limited "product promotion" within the forum state, and that its direct mail pieces and cost quotes for homocysteine kits did not amount to offers to sell to customers in Colorado because the terms of sale were not included (*id.*).  The second declaration of Mr. Shugart states that defendant's website permits users to contact defendant, but "does not possess the functionality to permit internet users to actually place orders." (Second Declaration of Shugart at ¶ 3, attached to Defendant's Reply Brief (Dkt. # 49)). Defendant argues that such activities are "too indefinite" to constitute offers to sell (*id.* at 4-5).

Plaintiff asserts in its surreply that the defendant's website was only recently modified to eliminate the order form that was part of the website, and prior to the alteration defendant did offer the infringing product for sale in Colorado over the website (Plaintiff's Surreply at 5-6)  Plaintiff asserts that Exhibit 3 to its surreply is a printout of the order form from defendant's website before it was modified.  It certainly

---

[1]   35 U.S.C. § 271(a) provides, in pertinent part, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent."  As explained in *3-D Systems, supra*, the "offer to sell " language was added to the statute in 1994.  160 F.3d at 1378.

appears to permit the ordering of defendant's products, and among the products available for order is the homocysteine kit (*see* Exhibit 3 to Plaintiff's Surreply at 3). Defendant has not refuted these apparent facts.

In *Wise v. Lindamood*, 89 F. Supp. 2d 1187 (D. Colo. 1999), Chief Judge Babcock, in considering whether general personal jurisdiction existed in Colorado in a copyright infringement action, drew a distinction between the operation of an interactive website and a "passive" or "moderately interactive" website, finding that either alone is "insufficient to confer general personal jurisdiction. 89 F. Supp. 2d at 1194. He stated, however, that "an 'interactive' Web site, together with other contacts, can meet the minimum jurisdictional threshold." *Id.* Chief Judge Babcock found that the defendant's operation of what he described as a "moderately interactive" website, coupled with other contacts supplied sufficient grounds to exercise general personal jurisdiction.

In *Boppy Co v. Luvee Products Corp.*, 72 U.S.P.Q. 2d. 1577 (D. Colo. 2004), Judge Krieger of this district further discussed the evolving distinction between "interactive" and "passive" websites for purposes of establishing minimum contacts. *See* 72 U.S.P.Q. 2d. at 1579-80. Judge Krieger found that a website that allows "users to browse available fabric choices and place on-line orders, . . . functions much like a physical store" and provides minimum contacts under the relevant test. While Judge Krieger ultimately found a lack of personal jurisdiction over the defendant, that was due to the absence of any other business activities in Colorado besides the one sale in the state to the plaintiff's attorney. *Id.* at 1580-81.

In the instant case, resolving the asserted conflict in favor of the plaintiff as this Court must do, the facts appear to show that defendant at least for a time operated an

interactive or moderately interactive website that allowed customers to order the alleged infringing product.  In addition, defendant otherwise seeks to, and does in fact, conduct business in the State of Colorado by generally promoting and selling its products here, and by specifically promoting the homocysteine kits by direct mailing, telephone and email contacts, even if such communications themselves do not constitute "offers to sell."  Thus, this Court, finds that the first two prongs of the test for personal jurisdiction are met here–the defendant purposefully directed its activities at residents of the forum and the plaintiff's infringement claim arises out of or relates to those activities.

Defendant argues even if the requisite minimum contacts with Colorado are found here, assertion of personal jurisdiction over it in Colorado is nonetheless not reasonable and fair (Defendant's Motion at 6-9).  Once a plaintiff has made a prima facie showing of sufficient minimum contacts to support jurisdiction, a court must then consider whether the exercise of personal jurisdiction "offends 'traditional notions of fair play and substantial justice.'"  *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Industry Co. v. Superior Court of Cal.,* 480 U.S. 102, 113 (1987).  As stated in *3-D Systems, supra*, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, it must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable, citing to *Akro* quoting from *Burger King*.  160 F.3d at 1380.

Five factors are relevant to this inquiry: 1) the burden on the out-of-state defendant; 2) the forum state's interest in resolving the dispute; 3) the plaintiff's interest in receiving convenient and effective relief; 4) the interstate judicial system's interest in

obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental social policies. *OMI Holdings,* 149 F.3d at 1095.

Here, defendant essentially argues three of these factors: 1) that litigating in Colorado is a "burden" and Colorado is not a convenient forum because defendant's personnel, records and witnesses are located in California; 2) that Colorado has no special interest in this dispute so as to justify having the case proceed in this district (Defendant's Motion at 7-8), and 3) that plaintiff has no special interest in litigating this dispute in Colorado. *Id.* at 8.

With respect to the first factor, this Court notes that defendant has availed itself of the right to pursue business in Colorado and any burden placed upon it to litigate here is part of the obligation connected to doing business in this state.  As plaintiff argues, exercise of personal jurisdiction in Colorado is not unreasonable, for defendant has sought to avail itself of sales opportunities in Colorado, as presumably it has in other states.  The fact that defendant has not made a sale in the District of Colorado is not for lack of trying.  That does not render jurisdiction in Colorado any more unfair than in any other state where it has made offers but may not have consummated a sale. If defendant's approach were correct, a mail order business or website operator could only be sued in the state where it is located, despite engaging in business elsewhere.

Moreover, contrary to defendant's suggestion, plaintiff has not randomly picked Colorado for its venue.  First, it has previously litigated this very patent in the District of Colorado.  Second, it appears that the patent at issue was developed at the University of Colorado Health Sciences Center so that documents and witnesses associated with

the patent are located in Colorado.  *See* Declaration of Robert H. Allen, Exhibit A to

Plaintiff's Opposition, at ¶¶ 3-4).  While such facts might not be relevant if the validity

of the patent were not at issue, it appears in this case that validity will be very much

at issue.  *See* Defendant's Motion to Stay (Dkt. # 30) filed December 30, 2005.

In addition, the University of Colorado has an interest in the litigation as a part owner of

royalties from the patent.  Declaration of Robert H. Allen at ¶ 5.  Thus Colorado has an

interest in this dispute, and plaintiff has a specific interest in seeking relief here.

While it is true that this case could be litigated in California where defendant

maintains its principal place of business, or perhaps in Connecticut where plaintiff

has its principal place of business, there is no compelling case that the exercise of

jurisdiction in Colorado is unreasonable or unfair.  Because the exercise of specific

jurisdiction is proper, there is no need to analyze plaintiff's arguments related to

general jurisdiction.

### B.    Motion to Dismiss For Lack of Venue

Defendant correctly states that venue under the patent venue statute, 28 U.S.C.

§ 1400(b) is proper only in "any judicial district where the defendant resides" or

alternatively, "where the defendant has committed acts of infringement and has a

regular and established place of business."  However, as defendant acknowledges

(Defendant's Brief at 9), although its place of business is in California for purposes of

the venue statute it "resides" in any judicial district in which it is subject to personal

jurisdiction.  *See Dart Int'l, Inc., v. Interactive Target Sys., Inc.*, 877 F. Supp. 541, 546

(D. Colo. 1995); *see also OpenLCR.com, Inc. v. Rates Technology, Inc.* 112 F. Supp.

2d 1223, 1230 (D. Colo. 2000).  Having found that personal jurisdiction over defendant

may be exercised in Colorado, its motion to transfer venue must be DENIED.

### C.    Motion to Transfer Venue to California

In support of its request to transfer venue to California, defendant cites to nine

factors that the Tenth Circuit recognizes as relevant in considering a venue transfer

motion (Defendant's Motion at 10-11), but argues only some of those.  The Court does

not find that any of them suggest a venue transfer.

First, contrary to defendant's suggestion, the plaintiff's choice of forum should

be given at least some weight here, for as explained above, plaintiff did not randomly

choose Colorado for the filing of this suit.  Second, the accessibility of witnesses may

also favor venue in Colorado, for while defendant's witnesses may well reside in

California as it asserts, nonparty witnesses are more likely to be found in Colorado,

including parties who were solicited to buy the alleged infringing product or accessed

defendant's website, the University personnel who may testify regarding the validity of

the patent, and perhaps others who may testify regarding damages.

Third, this Court does not agree that this case can be resolved more

expeditiously in California.  Although the statistics cited by defendant may be valid,

they do not demonstrate a huge variance between the districts, and in any event, they

do not necessarily apply to the rapidity with which this particular Court can advance this

case to trial.  This Court believes it could bring this case to trial in less time than the

26.4 months average cited by defendant.  But, the reality of this case is that defendant

is not in a hurry to bring the case to trial, and as reflected in its motion for stay prefers

that this case await the outcome of the case pending before the Supreme Court, *Lab.*

*Corp. of Am. Holdings v. Metabolite Lab's, Inc.,* 126 S. Ct. 601 (2005), in which the validity of the '658 patent may be determined.[2]

Accordingly, the motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is DENIED.

**CONCLUSION**

Defendant's Corrected Motion to Dismiss, or in the Alternative, Motion To Transfer Venue (Dkt. # 17), filed October 13, 2005, is DENIED.

DATED: April 4, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge

_____

[2]   The Court notes that oral argument before the Supreme Court in *Lab. Corp. of Am. Holdings v. Metabolite Lab's, Inc.*, was held on March 21, 2006.